UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

UNITED STATES OF AMERICA

v.                               Case No.: 8:24-cr-370-VMC-AEP

ADISON DANIEL LOPEZ RAMIREZ

_____/

**ORDER**

This matter comes before the Court pursuant to the United States of America's Motion to Revoke Conditional Order of Release (Doc. # 16), filed on March 24, 2025. Defendant Adison Daniel Lopez Ramirez responded on April 3, 2025. (Doc. # 20). Mr. Lopez was transported from the Northern District of Ohio, where he was arrested, to the Middle District of Florida on May 1, 2025. The Court held a hearing on the Motion on May 2, 2025. For the reasons that follow, the Motion is granted. The Court revokes the conditional release order and orders that Mr. Lopez Ramirez remain detained.

I.  **Legal Standard**

The United States filed its Motion pursuant to 18 U.S.C. § 3145(a)(1). That statute states:

> If a person is ordered released by a magistrate judge, or by a person other than a judge of a court having original jurisdiction over the offense and

>other than a Federal appellate court - (1) the attorney for the Government may file, with the court having original jurisdiction over the offense, a motion for revocation of the order or amendment of the conditions of release.

18 U.S.C. § 3145(a)(1). Such motion is to be "determined promptly." Id.

"The District Court Judge with original jurisdiction then reviews de novo the Magistrate Judge's order." United States v. Noland-James, No. CR19-261-RSM, 2020 WL 1904049, at *2 (W.D. Wash. Apr. 17, 2020); see also United States v. Hurtado, 779 F.2d 1467, 1481 (11th Cir. 1985) ("[W]e follow suit and require that our district courts undertake *de novo* review of the pretrial detention determinations of the magistrates."). Thus, this Court, through its de novo review, must decide "whether any condition or combination of conditions . . . will reasonably assure the appearance of [Mr. Lopez Ramirez] as required and the safety of any other person and the community." 18 U.S.C. § 3142(f).

To determine what conditions of release will reasonably assure the appearance of the defendant as required and the safety of any other person and the community, the Court considers:

>(1) the nature and circumstances of the offense charged, including whether the offense is a crime of violence, a violation of section 1591, a Federal

2

crime of terrorism, or involves a minor victim or a controlled substance, firearm, explosive, or destructive device;

(2) the weight of the evidence against the person;

(3) the history and characteristics of the person, including

    (A) the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and

    (B) whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law; and

(4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release.

18 U.S.C. § 3142(g).

The burden on the United States as to risk of flight is preponderance of the evidence, and its burden as to dangerousness is clear and convincing evidence. See United States v. Quartermaine, 913 F.2d 910, 915 (11th Cir. 1990) ("The issue is: whether the government proved by a preponderance of the evidence that Quartermaine posed a risk of flight, and whether the government proved by clear and convincing evidence that Quartermaine posed a danger to

the community."). "[I]t has been held 'that a finding of either danger to the community *or* risk of flight will be sufficient to detain the defendant pending trial.'" United States v. King, 849 F.2d 485, 488 (11th Cir. 1988) (quoting United States v. Portes, 786 F.2d 758, 765 (7th Cir. 1985)).

**II. Discussion**

Mr. Lopez Ramirez, a citizen of El Salvador, illegally entered the United States in 2014 and has resided in Ohio since 2017. On August 7, 2024, Mr. Lopez Ramirez was indicted and charged with conspiring to traffic firearms and committing money laundering offenses. (Doc. # 1). According to the affidavit by Special Agent Brett McKean of the Bureau of Alcohol, Tobacco, Firearms, and Explosives, Mr. Lopez Ramirez traveled from Ohio to St. Petersburg, in the Middle District of Florida, to commit the charged offense on or about October 21, 2021. (Doc. # 16 at 2-4; Doc. # 16-1 at 7-9). There, Mr. Lopez Ramirez is alleged to have delivered ten AR-type rifles and ammunition in exchange for $16,000 to undercover ATF agents posing as Mexican cartel members. Id. Photographs show that the guns were kept in a large box in the rear hatch of the vehicle driven by Mr. Lopez Ramirez, beneath a small pink suitcase. (Doc. # 16 at 2-3). According to the ATF agent's affidavit, photographs, and bank records,

4

Mr. Lopez Ramirez deposited $9,000 of the proceeds into his co-conspirator's bank account shortly after the transaction. (Doc. # 16 at 2, 4; Doc. # 16-1 at 9).

Mr. Lopez Ramirez was arrested in Ohio on March 18, 2025. (Doc. # 14). The Department of Homeland Security also on March 18, 2025, issued an immigration detainer against Mr. Lopez Ramirez by serving it upon the United States Marshals Service. The Magistrate Judge in the Northern District of Ohio held a hearing beginning on March 18, 2025, and concluding on March 20, 2025. Mr. Lopez Ramirez's employer testified at the hearing. Ultimately, the Magistrate Judge denied the government's motion for pretrial detention and ordered that Mr. Lopez Ramirez be released under a $20,000 unsecured bond and standard and special conditions, including location monitoring. (Doc. # 47-2 at 31-36). This Court granted the government's motion to stay the release order pending this Court's resolution of the instant Motion to Revoke Conditional Order of Release. (Doc. # 10).

The United States contends that the immigration detainer guarantees Mr. Lopez Ramirez's non-appearance at future proceedings because it will either result in his prompt removal or incentivize him to flee if he is not immediately detained by Immigration and Customs Enforcement upon release.

5

Mr. Lopez Ramirez challenges this, arguing that the Court should give little to no weight to the DHS detainer when considering the factors under the Bail Reform Act. The Court agrees with the United States.

"Some courts have held that detention is required in this situation because, when a defendant will likely be deported if released, there are no possible conditions that could 'reasonably assure the appearance of the person as required.'" United States v. Hernandez-Saldivar, No. 4:22-cr-00266-RDP, 2022 WL 4474893, at *3 n.7 (N.D. Ala. Sept. 26, 2022) (collecting cases). At a minimum, courts regularly consider immigration status, or a detainer, as relevant because it incentivizes a defendant to flee if released. See United States v. Garcia-Chagala, No. 2:17-cr-133-FtM-38MRM, 2017 WL 6535198, at *2 (M.D. Fla. Dec. 21, 2017) (affirming the magistrate judge's detention order).

At the May 2, 2025, hearing before this Court, the United States established by a preponderance of the evidence that Mr. Lopez Ramirez presents a serious flight risk. Thus, the Court — upon de novo review of the Magistrate Judge's release order and specified conditions of pretrial release — determines that no condition or combination of conditions short of pretrial detention will reasonably assure the

appearance of Mr. Lopez Ramirez as required. 18 U.S.C. § 3142(e)(1).

In reaching this determination, the Court has carefully assessed the relevant statutory factors. First, the nature and circumstances of the charged offense weigh in favor of detention because the charged offense involves the illegal sale of firearms to individuals thought to be cartel members. Mr. Lopez Ramirez's pending immigration consequences heighten the risk of flight and further weigh against release.

Second, the weight of the government's evidence against Mr. Lopez Ramirez heavily favors detention. The Court finds the evidence substantial here. It includes the ATF agent's affidavit, recordings, and photographs corroborating Mr. Lopez Ramirez's involvement in the sale of the firearms and deposit of proceeds into his co-conspirator's bank account. (Doc. # 16 at 2-4; Doc. # 16-1 at 7-9). The ATF agent's affidavit recounts:

> [Mr. Lopez Ramirez] introduced himself and retrieved a large box and plastic bag from the rear hatch of the vehicle. [Mr. Lopez Ramirez] handed the items to the [undercover agents] and entered the residence with the [undercover agents]. [Mr. Lopez Ramirez] told the [undercover agents] he had traveled from Ohio and that [his co-conspirator] sent him. The [undercover agent] opened the box and removed ten rifles from inside (nine .223/5.56 rifles and one 9-mm rifle). Multiple ammunition magazines were also removed from the box and the

> plastic bag . . . . [The co-conspirator] instructed the [undercover agent] to pay [Mr. Lopez Ramirez]. The [undercover agent] subsequently provided [Mr. Lopez Ramirez] with $16,000 in operational funds. [Mr. Lopez Ramirez] left the area . . . . Agents followed him . . . [as] he entered the drive-through of the PNC bank . . . . Bank records revealed that [Mr. Lopez Ramirez] made ATM cash deposits totaling $9,000 into the PNC bank account of [another co-conspirator].

(Doc. # 16-1 at 8-9). At the hearing before this Court, Mr. Lopez Ramirez's counsel conceded that the strength of the evidence was not being disputed.

Third, the Court finds that Mr. Lopez Ramirez's history and characteristics also weigh against release. True, Mr. Lopez Ramirez's family resides in Ohio where he has also lived and worked. But the Court is not persuaded by Mr. Lopez Ramirez's argument that he would be gainfully employed there if released. Although the federal defender in Ohio explained to the Magistrate Judge that an immigration attorney had confirmed that Mr. Lopez Ramirez held a temporary work visa (Doc. # 47-2 at 17), this Court received no documentation that he is legally permitted to work in the United States. More importantly, as of March 18, 2025, Mr. Lopez Ramirez has had a detainer lodged against him. Thus, even assuming he is entitled to legally work, Mr. Lopez Ramirez would be detained by DHS even if the Court were to order his release.

8

In determining whether Mr. Lopez Ramirez's appearance in court may be reasonably assured, the Court has also considered many potential conditions of release. But ultimately, the other conditions considered by the Court and discussed at the hearing do not provide reasonable assurance that Mr. Lopez Ramirez will appear.

In short, no condition or combination of conditions will reasonably assure the appearance of Mr. Lopez Ramirez as required. Therefore, the Court orders that Mr. Lopez Ramirez be detained pending trial.

Accordingly, it is hereby

**ORDERED, ADJUDGED,** and **DECREED:**

The United States of America's Motion to Revoke Conditional Order of Release (Doc. # 16) is **GRANTED.** The Court revokes the Magistrate Judge's release order and orders that Mr. Lopez Ramirez be detained pending trial.

**DONE** and **ORDERED** in Chambers, in Tampa, Florida, this 5th day of May, 2025.

VIRGINIA M. HERNANDEZ COVINGTON
UNITED STATES DISTRICT JUDGE